FILED - KZ
August 6, 2013 11:43 AM
TRACEY CORDES, CLERK
U S DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
bd / ___ Scanned by ___

Keturah Mixon
243 Devon Road
Battle Creek Mi. 49015
(269) 589-6469
Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Keturah Mixon<br>243 Devon Road<br>Battle Creek Mi. 49015<br>(269) 589-6469<br>Plaintiff,<br>Vs.<br>Bronson Health Care Group, Inc.<br>A Michigan corporation, Bronson Battle Creek<br>Hospital, a Michigan corporation<br>Individually, and doing business as<br>South-Western Michigan Trauma and Emergency Center<br>Of Bronson and Express care, and Southwestern Michigan<br>Emergency Service, P.C., a Michigan Professional<br>Corporation 300 North Ave.<br>Battle Creek Mi. 49017<br>(269) 966-8000<br>Defendant. | Case No. **1:13-cv-00843**<br>**Janet T. Neff**<br>**U.S. District Judge**<br><br>**COMPLAINT FOR $6,000,000 PER CLAIM $12,000,000.00 IN TOTAL DAMAGES, AND ALL APPROPRIATE RELIEF PURSUANT TO 42 U.S.C. 1395 dd, and 42 C.F.R. 489.24.**<br><br>**DEMAND FOR JURY TRIAL** |

### Jurisdiction

1. This court has jurisdiction under 28 U.S.C. 1331. Federal question jurisdiction arises pursuant to 42 U.S.C. 1395dd, and 42 C.F.R. 489.24.

### Venue

2. Venue is proper pursuant to 28 U.S.C. 1391 because the defendants are subject to personal jurisdiction in this district, and the events given rise to the claims alleged herein took place in this district.

## Parties

3. Plaintiff: Keturah Mixon resides at 243 Devon Road Battle Creek Mi. 49015.
4. Defendant: Bronson Battle Creek Hospital is located at 300 North Ave. Battle Creek Mi 49017

## Statement of Facts

5. On August 8, 2011 at 2:04 a.m., Bronson Battle Creek which participates with Medicaid, violated its statutory duties under 42 U.S.C. 1395dd, and 42 C.F.R. 489.24, on my behalf. On said morning, I went to the labor and delivery floor of the defendant hospital. My pregnancies are high risk for multiple reasons, and it is against defendant hospital guidelines, for me to be seen by a nurse, and not a physician. I was 20 weeks pregnant, I had been leaking fluid all day, having contractions that were 30 seconds apart, and in active labor which I informed the intake nurse of all of the above. I requested from the labor and delivery department to treat me, provide an appropriate medical screening examination, and to stabilize all of my known emergency medical conditions, in which they refused to do all of the above, all in direct violation of the federal statute Emergency Medical Treatment and Active Labor Act 42 U.S.C. 1395dd and 42 C.F.R., Hereafter referred to as EMTALA. After a brief stay in triage, that does not equate to a medical screening examination, according to EMTALA, I received a disparate screening examination as someone else, coming to the labor and delivery floor with similar complaints of the defendant hospital would have received. I was seen only by a nurse who is not listed in the defendant hospital bylaws as being qualified to treat a laboring patient with my pregnancy history. My treatment was non-uniformed, and against defendant hospitals policies and procedures. My treatment that I received on said morning was also disparate in comparison to treatment that I myself have received from the defendant hospital when I presented there on July 8, 2011 with similar complaints. The defendant hospital had an improper motive for my disparate treatment, the improper motive being, the staff at the defendant hospital did not want to take the necessary time that it would take, to give me an adequate medical screening examination, and necessary stabilizing treatment of all of my known emergency medical conditions, prior to discharging me. The evidence of the defendant hospitals improper motive was the length of time that I was in the triage area, prior to my unlawful discharge. I was discharged at 3:37 a.m., only 1 hour and 33 minutes after my arrival to the defendant hospital. I was discharged in active labor, bleeding, leaking fluid, with high blood pressure, and a fever, and still contracting every 30 seconds. I went home in active labor, and stayed in active labor until my water broke at 1:45 p.m. Later that afternoon, when I was carried by ambulance to Bronson Kalamazoo Methodist Hospital, where I delivered my stillborn son Princeton Mixon, on the following morning of August 9, 2011. No physician at the defendant hospital ever entered into my room to diagnose my stages of labor, rule out false labor, or fill out an express written physician certification stating that the benefits of my discharge outweigh the risks for me and my baby, and my baby was not constantly monitored, all in direct violation of the federal statute EMTALA. Defendant hospital was also supposed to do serial testing, give me an ultrasound, do a cervical exam, monitor my baby continuously, give me tocolytics, give me blood pressure medicine, give me a non-stress test, check my amniotic fluid, give me a bio-physical profile, and admit me to the hospital as an inpatient until my baby and my placenta were delivered. This is the defendant hospitals protocol that they were supposed to follow with me, and they failed to do so. The defendant hospital did not follow their own explicit protocol on my behalf. The following emergency medical conditions were known by the defendant hospital, and not stabilized upon my unlawful discharge from defendant hospital, causing me direct and personal harm:

6. In Active Labor
7. Vaginal bleeding greater than bloody show
8. Contractions every 30 seconds
9. Fetal tachycardia greater than 170
10. Fetal bradycardia less than 110
11. Significant fetal heart rate decelerations
12. Maternal High Blood Pressure

13. Maternal Fever
14. Leaking Fluid
15. All of the preceding allegations are documented by the defendant hospital, in the multiple copies of my medical records that I have previously obtained from defendant hospital.
16. I am not alleging Medical Malpractice.
17. The defendant hospital did not within its available staff, and facilities, provide me, the patient, known to be suffering from multiple emergency medical conditions with the medical treatment necessary to assure within the reasonable medical probability that no deterioration of the condition would likely occur, all in violation of EMTALA 42 U.S.C. 1395dd and 42 C.F.R. 489.24.

18. **Claim I.**
19. The Defendant Violated Federal Statute Emergency Medical Treatment and Active Labor Act 42 U.S.C. 1395 dd (a), and 42 C.F.R. 489.24
20. **§ 1395dd. Examination and treatment for emergency medical conditions and women in labor (a) Medical screening requirement** In the case of a hospital that has an emergency department, if any individual (whether or not eligible for benefits under this subchapter) " comes to the emergency department" as defined in paragraph b of this section, and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists Federal regulations do indicate that the medical screening examination must be conducted by an individual(s) who is determined qualified by hospital bylaws or rules and regulations and who meets the requirements of Sec. 482.55 of this chapter concerning emergency services personnel and direction.
21. **Plaintiff realleges paragraphs 1 through 17**
22. Defendant hospital is a participating hospital with medicare with a dedicated emergency department.
23. By doing the acts as described above, Defendant caused the plaintiff direct and personal harm, and or permitted the violation of Plaintiff's rights under the Federal statute EMTALA, 42 U.S.C. 1395dd, and 42 C.F.R. 489.24, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. 1395dd, and 42 C.F.R. 489.24.

## Claim II

24. The Defendant Violated Federal Statute Emergency Medical Treatment and Active Labor Act 42 U.S.C. 1395dd(b), and 42 C.F.R. 489.24.
25. Plaintiff realleges paragraphs 1 through 17
26. **(b) Necessary stabilizing treatment for emergency medical conditions and labor (1) In general** If any individual (whether or not eligible for benefits under this subchapter) comes to a

27. hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

### Claim II (Continued)

According to the EMTALA Statute the following definitions apply to this case: Emergency medical condition means-- (1) A medical condition manifesting itself by acute symptoms of Sufficient severity (including severe pain, psychiatric disturbances and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected to result in-- (i) Placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy;2) With respect to a pregnant woman who is having contractions--(i) That there is inadequate time to effect a safe transfer to another hospital before delivery; or (ii) That transfer may pose a threat to the health or safety of the woman or the unborn child .Labor means the process of childbirth beginning with the latent or early phase of labor and continuing through the delivery of the placenta. A woman experiencing contractions is in true labor unless a physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, certifies that, after a reasonable time of observation, the woman is in false labor. Stabilized means, with respect to an "emergency medical condition" as defined in this section under paragraph (1) of that definition, that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility or, with respect to an "emergency medical condition" as defined in this section under paragraph (2) of that definition, that the woman has delivered the child and the placenta.(B) A physician (within the meaning of section 1861(r)(1) of the Act) has signed a certification that, based upon the information available at the time of transfer, the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual or, in the case of a woman in labor, to the woman or the unborn child, from being transferred. The certification must contain a summary of the risks and benefits upon which it is based.

28. By doing the acts described above, Defendant caused the plaintiff direct and personal harm, and or permitted the violation of Plaintiff's rights under the Federal Statute of EMTALA, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. 1395dd, and 42 C.F.R. 489.24.

### Request For Relief

29. Section 42 U.S.C. 1395 dd (d)(2)(a) states the following: Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate, with no maximum on the liability.
30. The personal harm that I have suffered, and am currently suffering, as a direct result of the Defendant hospitals multiple violations under my Federal EMTALA rights, are as follows: Clinically diagnosed major depression, severe emotional distress, pain and suffering past present and future, fright, horror, grief, shame, humiliation, anger and worry. Endured labor with the knowledge that I would be delivering a dead child, complete terror of holding my dead son.

31. I had to endure another labor that was induced by Bronson Kalamazoo hospital that lasted for ten hours to deliver the placenta, before emergency surgery was performed to deliver said placenta, in which I lost over a litre of blood from the surgery, making recovery longer and harder because of my low blood levels.

### Request For Relief (Continued)

32. WHEREFORE, the Plaintiff requests:
33. Compensatory damages, including general and special, economic and non-economic damages in the amount of $6,000,000 per claim.
34. Any further relief which the court may deem appropriate.
35. That all damage award amounts be subject to Michigan's Personal Injury Law, and not Michigan's Medical Malpractice law, as this is not a claim under medical malpractice.
36. Mandatory Emergency Medical Treatment and Active Labor Act training for all members of staff at Defendant Hospital.

### Demand For Jury Trial

37. Plaintiff hereby requests a trial by jury of no less than 12 persons, on all issues so triable pursuant to Fed. R. Civ. P. 38(b)

Dated: August 6, 2013

*[signature: Keturah Tawana Mixon]*

Keturah Tawana Mixon

243 Devon Road Battle Creek Mi. 49015

(269) 589-6469

Plaintiff in Pro Per