UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH MIXON,

                Plaintiff,                                    Hon. Janet T. Neff

v.                                                Case No. 1:13-cv-00843

BRONSON HEALTH CARE GROUP,
INC., et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motions for Summary Judgment (Dkt. 84 and Dkt. 98) and Defendants' Motion for Summary Judgment (Dkt. 94), which were referred to the undersigned by the Honorable Janet T. Neff  for report and recommendation under 28 U.S.C. § 636(b)(1)(B).  Plaintiff Keturah Mixon asserts a claim for relief under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd and 42 C.F.R. 489.24. The parties have moved for summary judgment pursuant to Fed. R. Civ. P. 56. The court has carefully reviewed the submissions of both parties and has decided that a hearing would be neither necessary nor helpful. For the reasons stated below, the undersigned recommends that plaintiff's motions be denied and that defendants' motion be granted.

### BACKGROUND

EMTALA has sometimes been referred to as the "anti-dumping statute." It is concerned with the practice of some Medicare approved hospitals refusing care for patients with an emergency

medical condition or who are in active labor because the patients lack insurance or other means to pay their medical bills. *See, Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268 (6th Cir. 1990), wherein the Sixth Circuit noted that the only clear guidance from the legislative history is that Congress intended to prevent hospitals from dumping patients who suffered from an emergency medical condition because the patients lacked insurance to pay their medical bills. EMTALA is not a statute providing a cause of action for medical malpractice claims, which are governed by state law instead. *See, Cleland, supra; see also Thornton v. Southwest Detroit Hospital*, 895 F.2d 1131, 1133 (6th Cir. 1990).

In plaintiff Mixon's case, even reading plaintiff's pro se complaint liberally as the court must, *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), the undersigned recommends that defendants are entitled to summary judgment. Although the loss of plaintiff's pregnancy was undoubtedly tragic, there is no genuine issue of material fact on the following critical elements of plaintiff's claim. First, plaintiff has not established that there was anything inappropriate about the screening plaintiff was given. Second, the facts of record support that plaintiff was not discharged with an emergency medical condition or while in active labor. Third, plaintiff has produced no evidence from which a reasonable juror could conclude that defendants were improperly motivated by plaintiff's inability to pay for any services rendered or for any other reason. Finally, plaintiff has introduced no evidence supporting the conclusion that her pregnancy could have been sustained to fetal viability even had she not been discharged, i.e., there are no facts to support causation.

## FACTS

Plaintiff, who was pregnant, came to Bronson Battle Creek Hospital on August 8, 2011, at approximately 2:00 AM.[1] She complained of cramping and fluid leakage, and self-reported a recent onset of "contractions" every 30 seconds. (Dkt. 95, Exhs. C and E) Bronson's staff assessed plaintiff's condition, documented plaintiff's complaints, took an obstetric health history, assessed her vitals, and performed a physical evaluation. (Dkt. 95, Exhs. D and E). Labor and delivery nurse Kimberly Eidson palpated plaintiff's abdomen and found that plaintiff's uterus was relaxed upon examination and that there was no evidence of contractions or uterine irritability. Plaintiff was monitored for approximately an hour with a monitor called a TOCO, which also confirmed the absence of labor contractions. The TOCO detected a fetal heart rate of 170 bpm. (Dkt. 95, Exh. F). Plaintiff was also administered a test utilizing a testing strip called Nitrazine, which detects whether fetal membranes have ruptured. (Dkt. 95, Exh. E). This test was also negative.

Rachel Yankama, M.D., plaintiff's obstetrician, was contacted by nurse Eidson. Plaintiff's doctor ordered an additional test called AmniSure to further confirm that plaintiff's fetal membranes had not ruptured. (Dkt. 95, Exh. E). This test was also negative. (Dkt. 95, Exh. G). Dr. Yankama ordered a urinalysis and prescribed the antibiotic Keflex. (Dkt. 95, Exhs. H and I). Plaintiff was discharged at approximately 3:45 AM in stable condition with no signs or symptoms of distress. (Dkt. 95, Exh. E). She was instructed to contact her doctor or return to the hospital if she had certain symptoms. (Dkt. 95, Exh. J).

---

[1]The facts stated are largely taken from Defendants' Brief in Support of Summary Judgment (Dkt. 95) because they are all supported by pertinent exhibits which would be admissible at trial. *See,* Fed. R. Civ. P. 56; *see also,* Wright, Miller, & Kane, *Federal Practice and Procedure*, Vol. 10A § 2721 and citations contained therein.

Approximately 35 hours later, plaintiff went to Bronson Methodist Hospital in Kalamazoo, Michigan. After a cervical examination and subsequent ultrasound, hospital staff determined that plaintiff was in the process of miscarrying her baby. The baby was at approximately 19-20 weeks gestation. Plaintiff was admitted for an anticipated spontaneous miscarriage in progress. (Dkt. 95, Exh. K). On hospital day two it was determined that plaintiff's fetus had died in utero. Plaintiff spontaneously delivered the stillborn infant and underwent surgery to deliver the placenta. (Dkt. 95, Exh. K). Medical staff suspected that an infection of the placenta and amniotic fluid (chorioamnionitis) led to the premature rupture of plaintiff's membranes which in turn led to the delivery of plaintiff's pre-viable baby. Plaintiff remained in the hospital until August 11, 2011, when she was discharged to home with routine postpartum discharge instructions. (Dkt. 95, Exh. K).

Dr. Yankama reiterated to plaintiff when plaintiff went for a follow-up appointment on August 12, 2011, that there was nothing that could have been done to prevent the pregnancy loss at 20 weeks gestation. (Dkt. 95, Exh. M). A pathological examination of the placenta revealed the presence of marked inflammation involving the fetal membranes and umbilical cord, which was determined to be the immediate cause of the fetus's death.

Plaintiff alleges that Bronson violated EMTALA by failing to provide her with an appropriate medical screening examination and by failing to stabilize her prior to her discharge. Despite evidence of testing performed by Bronson to the contrary, plaintiff appears to claim that she was in active labor. She blames Bronson for her miscarriage and claims damages for physical and emotional harm. Plaintiff states many conclusions and makes many accusations against Bronson but has produced no evidence to substantiate her allegations. There is simply no evidence that Bronson treated plaintiff in any disparate manner because she had no insurance or for any other reason. Nor does plaintiff

-4-

have any medical evidence contrary to the evidence produced by Bronson outlining the medical evaluation plaintiff was given on August 8, 2011 and expert opinion that it was appropriate. She has produced no evidence that the evaluation was inappropriate. Plaintiff has no expert testimony to dispute that the miscarriage was inevitable and not caused by Bronson's conduct. In short, Plaintiff has submitted no evidence but has simply stated conclusions. Therefore there is no dispute as to any material fact and defendants are entitled to summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must

-5-

view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff

on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Early on in this case, the undersigned recognized the difficulty of plaintiff proving her claims without expert testimony. As early as her September 23, 2013 Rule 16 Scheduling Conference, the court discussed at length with plaintiff the benefit of having an attorney, discussed contingency fee arrangements, and discussed the necessity of expert witness testimony. (Dkt. 9).[2] The undersigned has confirmed that plaintiff again was warned of her need for an expert witness on the record at a hearing on her motion to compel on March 5, 2014 (Dkt. 47). In addition, although there is no formal record of the exchange, the undersigned recalls distinctly in an early settlement conference on January 8, 2014, discussing with plaintiff in detail the difficulties of establishing causation in her

---

[2]The undersigned has listened to recordings regarding the September 23, 2013 and March 5, 2014 proceedings (Dkt. 9 and Dkt. 47).

case without an expert witness, as well as the difficulty establishing whether she was in active labor during the August 8, 2011 visit to Bronson Hospital. The undersigned went so far as to advise plaintiff that, based on the hospital's records without expert interpretation, no reasonable juror could conclude that she was in active labor on the date of her August 8, 2011 visit. In sum, plaintiff was warned on several occasions of the likely need for expert testimony. As noted, EMTALA is not a federal super medical malpractice statute, nor is it a guarantee of the successful end to every pregnancy.

Plaintiff has failed to introduce evidence that she was discharged from Bronson Battle Creek Hospital on August 8, 2011 either in an emergency medical condition or in active labor. The undersigned has carefully examined plaintiff's medical records from the visit in question, and without expert testimony to the contrary concludes that there is no genuine dispute of material fact that plaintiff was given a thorough and appropriate examination on the date in question. Plaintiff has been adamant throughout this matter that expert testimony is not required. However, plaintiff was repeatedly cautioned to the contrary.

Plaintiff's reliance on *Jennifer St. John v. Robert Wilcox, M.D., et al.,* Case No. 08-cv-229 JCH/KBM in the United States District Court for the District of New Mexico, November 17, 2009 (Dkt. 95, Exh. R) is misplaced for a number of reasons. First, the facts are distinguishable. Second, the *St. John* court recognized that proof of a causal link between the alleged violation and the alleged injury would generally require expert testimony. Finally, and perhaps most importantly, this is not the law in this circuit. The Sixth Circuit has acknowledged the need for expert testimony because EMTALA claims often bring into question medical judgment. *Smith v. Botsford General Hospital*, 419 F.3d 513, 519 (6th Cir. 2005); *see also, e.g., Burd ex rel. Burd v. Lebanon HMA, Inc.*, 756

F.Supp.2d 896, 903 (M.D. Tenn., 2010). This case is governed by Sixth Circuit authority. The undersigned finds that it may theoretically be possible to conclude under very different circumstances that EMTALA had been violated absent expert testimony, but it is clearly not possible on the facts of this case. The exhibits and expert reports submitted by defendants demonstrate that plaintiff was given an appropriate screening and that she was not in active labor during her August 8, 2011 emergency room visit.

Furthermore, plaintiff has come forward with no facts from which a reasonable juror could conclude that the Bronson defendants were improperly motivated in their handling of plaintiff's emergency visit. Plaintiff has indicated that "a nurse" questioned her about the number of children that she had. However, there is nothing linking this comment, if it occurred, to plaintiff's medical screening or her eventual discharge. It simply does not take her allegations beyond the speculative level.

Plaintiff also erroneously concludes that the cause of her son's death is irrelevant to her EMTALA cause of action. In its civil enforcement section, EMTALA provides as follows:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A) (*emphasis added*). Plaintiff's amended complaint states as follows:

> The personal harm that I have suffered, and am currently suffering, as a direct result of the Defendant hospitals multiple violations under my Federal EMTALA rights, are as follows: I have Clinically diagnosed major depression manifesting itself in physical illness, severe emotional distress, pain and suffering past present and future, fright, horror, grief, shame, humiliation, anger and worry. The fact that No effort was made by defendants to save my sons' life, torments me daily. I Endured labor with the knowledge that I would be delivering a dead child, complete terror of holding my dead son.

(Dkt. 22, ¶ 29 (*emphasis added*).

Although the undersigned does not doubt that plaintiff has suffered greatly as a result of the loss of her child, there is no logical way to separate that suffering from her miscarriage. There is not a shred of evidence on the current record that anything defendants did or did not do caused or contributed to that loss. Indeed the facts are completely to the contrary. *(See,* Dkt. 95, Exh. P, Affidavit of Kenneth J. Nunes, M.D. ¶¶ 3(b) through (d); *see also,* Exh. U, the Rule 26(b)(2) Expert Report of Mary Davis, M.D.).

There is no evidence that the care provided to plaintiff and/or the decision to discharge her was based on anything other than the best medical judgment of those employed by the hospital.  (*See,* Dkt. 95, Exh. O, Affidavit of Stephanie Smith, BSN, RN at  ¶ A). Plaintiff was provided with an examination, tests, and consult with her treating obstetrician.  The fact that she miscarried a stillborn fetus was tragic. However, there is no evidence that this was due to defendants' failure to do "an appropriate medical screening examination within the capability of the hospital's emergency department."  42 U.S.C. § 1395dd(a).  Nor is there a shred of evidence (other than plaintiff's assertions) that she was in active labor at the time she was discharged.  In fact, all of the evidence points to the fact that she was not.  Was the pregnancy troubled?  Obviously it was.  The fact that in hindsight Ms. Mixon miscarried her pregnancy does not lead to the conclusion that her screening was inappropriate or that she was in active labor when she presented at Bronson on August 8, 2011.  Nor does it lead to a conclusion that anything the defendants did or did not do caused, or even contributed to, her loss.

Plaintiff has been consistently insistent that the EMTALA does not require medical expert testimony.  However, the Court concludes that in this particular case plaintiff can prove neither that

the screening was inappropriate nor that she was in active labor without expert testimony. Indeed, the Court has studied the exhibits submitted in support of defendants' motion and, as one not trained in the medical area, can conclude only that the screening was excellent, that plaintiff was not in active labor, and further that her discharge was not the cause of her stillbirth. While there theoretically may be cases where it could be apparent to a layperson that medical screening was not appropriate or even done at all and a person was "dumped," this is not one of them.

Plaintiff was clearly discharged on the basis of medical judgment. In sum, the Court concludes that under all of the circumstances of this case, no reasonable jury absent expert testimony could conclude: (1) the screening which Ms. Mixon received was inappropriate; (2) that Ms. Mixon was in active labor at the time of the screening; and (3) any action or inaction by the defendants was the cause of the loss of her pregnancy.

Even if plaintiff had established an inappropriate screening or that she was in active labor, which she has not, it is clearly beyond the knowledge and experience of any layperson to determine that anything that was done or not done caused the miscarriage of her baby.

## CONCLUSION

As discussed above, plaintiff cannot prove her case on the existing record. As she was told by the undersigned, based on the hospital's medical records without expert interpretation no reasonable juror could conclude that she was in active labor on the date of her August 8, 2011 visit. The undersigned acknowledges plaintiff's loss and pain, but she cannot meet the standards for a claim for relief under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. As mentioned above, there is no evidence that Bronson treated plaintiff in any disparate manner because she had no insurance or for any other reason. Plaintiff has no expert

testimony to dispute that the miscarriage was inevitable and not caused by Bronson's conduct.

Without expert testimony she has no chance of success. The undersigned recommends that Plaintiff's

Motions for Summary Judgment (Dkt. 84 and Dkt. 98) be **denied**, Defendants' Motion for Summary

Judgment (Dkt. 94) be **granted**, and this matter terminated.


                              Respectfully submitted,

Date:  February 25, 2015            _/s/ Ellen S. Carmody_____
                              ELLEN S. CARMODY
                              United States Magistrate Judge


      OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).